# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI
# SOUTHEASTERN DIVISION

| | |
|---|---|
| TONY M. BUTCHER, | CIVIL COMPLAINT |
| Plaintiff, | |
| v. | CASE NO. 1:20-cv-00223 |
| HARPETH FINANCIAL SERVICES, LLC d/b/a ADVANCE FINANCIAL, | DEMAND FOR JURY TRIAL |
| Defendant. | |

## COMPLAINT

**NOW COMES** Tony M. Butcher ("Plaintiff"), by and through her undersigned attorney, complaining as to the conduct of Harpeth Financial Services, LLC d/b/a Advance Financial ("Defendant") as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action seeking redress for violations of the Telephone Consumer Protection Act ("TCPA") pursuant to 47 U.S.C. §227 for Defendant's unlawful conduct.

### JURISDICTION AND VENUE

2. Subject matter jurisdiction is conferred upon this Court by the TCPA and 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant conducts business in the Eastern District of Missouri, Plaintiff resides in the Eastern District of Missouri, and a substantial portion of the events or omissions giving rise to the claims occurred within the Eastern District of Missouri.

1

## PARTIES

4. Plaintiff is a natural person over 18-years-of-age and is a "consumer" as the term is defined by 47 U.S.C. §153(39).

5. Defendant is a financial service company with its principal office located at 100 Oceanside Drive, Nashville, TN 37204.

6. Defendant acted through it agents, employees, officers, members, directors, heirs, successors, vendors, assigns, principals, trustees, sureties, subrogees, vendors, third-party contractors, representatives, and insurers at all times relevant to the instant action.

## FACTS SUPPORTING CAUSES OF ACTION

7. In March 2019, Plaintiff took out a loan with Defendant ("subject debt").

8. Plaintiff was making automatic bi-weekly payments on the subject debt to Defendant through her checking account.

9. Due to financial hardship, Plaintiff fell behind on her payments of the subject debt in July 2020 and submitted a stop payment request to Defendant for the automatic bi-weekly withdrawals from her checking account.

10. In July 2020, Defendant began placing collection calls to Plaintiff's cellular telephone number (901) XXX-5286, in an attempt to collect on the subject debt.

11. Plaintiff is and always has been the sole subscriber, owner, possessor, and operator of the cellular telephone number ending in 5286.

12. In August 2020, Plaintiff demanded Defendant cease calling her cellular phone number.

13. Plaintiff's demands that Defendant's phone calls cease fell on deaf ears and Defendant continued its phone harassment campaign, calling Plaintiff's cellular phone number without her consent.

14. In addition to the barrage of telephone calls, on October 10, 2020, Defendant withdrew $307 from Plaintiff's bank account, which was unauthorized. Plaintiff made a stop payment request to Defendant and payments have not been made for the past 2 months.

15. Despite the unauthorized withdrawal on October 10, 2020, Defendant then placed a telephone call to Plaintiff the very next day on October 11, 2020.

16. In total, Defendant placed or caused to be placed no less than 71 harassing phone calls to Plaintiff's cellular telephone from August 2020 through the present day without her consent.

17. In the calls that Plaintiff did answer, Plaintiff was greeted by a noticeable period of "dead air" while Defendant's automated telephone system attempted to connect Plaintiff to a live agent.

18. Specifically, there would be an approximate 3 second pause between the time Plaintiff said "hello," and the time that a live agent introduced them self as a representative of Defendant.

19. Moreover, Plaintiff also hears what sounds to be call center noise in the background of each of Defendant's calls.

20. Upon information and belief, Defendant placed its calls to Plaintiff's cellular telephone using an automated telephone dialing system ("ATDS"), a telephone dialing system that is commonly used in the credit collection industry to collect defaulted debts.

21. Defendant has used numerous phone numbers to place collection calls to Plaintiff's cellular phone number, including but not limited to (731) 577-1140, (423) 299-1567, (865) 351-0920, (865) 351-0777, and (615) 341-5900.

22.  Upon information and belief, it may have also used other phone numbers to place calls to Plaintiff's cellular phone.

**DAMAGES**

23. Defendant's harassing phone calls have severely disrupted Plaintiff's daily life and general well-being.

24. Defendant's phone harassment campaign and illegal collection activities have caused Plaintiff actual harm, including but not limited to, invasion of privacy, nuisance, intrusion upon and occupation of Plaintiff's cellular telephone capacity, wasting Plaintiff's time, the increased risk of personal injury resulting from the distraction caused by the incessant phone calls, aggravation that accompanies unsolicited telephone calls, emotional distress, mental anguish, anxiety, loss of concentration, diminished value and utility of telephone equipment and telephone subscription services, the loss of battery charge, and the per-kilowatt electricity costs required to recharge her cellular telephone as a result of increased usage of her telephone services.

25. In addition, each time Defendant placed a telephone call to Plaintiff, Defendant occupied Plaintiff's telephone number such that Plaintiff was unable to receive other phone calls.

26. Concerned about the violations of her rights and invasion of her privacy, Plaintiff was forced to seek the assistance of counsel to file this action to compel Defendant to cease its unlawful conduct.

**COUNT I – VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT**

27. Defendant placed or caused to be placed non-emergency calls, including but not limited to the calls referenced above, to Plaintiff's cellular telephone using an automatic telephone dialing system ("ATDS") without her prior consent in violation of 47 U.S.C. §227 (b)(1)(A)(iii).

28. The TCPA defines ATDS as "equipment which has the capacity...to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers." 47 U.S.C. §227(a)(1).

29. Upon information and belief, based on the lack of prompt human response during the phone calls in which Plaintiff answered, Defendant used an automated dialing system to place calls to Plaintiff's cellular telephone.

30. Upon information and belief, the ATDS employed by Defendant transfers the call to a live agent once a human voice is detected, thus resulting in a pause after the called party speaks into the phone.

31. Upon information and belief, Defendant's phone system stores telephone numbers to be called, using a random or sequential number generator, which it used to call Plaintiff on her cellular phone.

32. The fact that Defendant's phone system continued to place calls after Defendant was aware that Plaintiff did not wish to receive further calls clearly evinces the fact that Defendant's phone system stored Plaintiff's phone number and continued to randomly or sequentially auto-dial Plaintiff's cellular phone number without her consent.

33. There would be no reason for Defendant to continue to contact Plaintiff, especially after having been notified to cease all telephone communications. Yet, Defendant's ATDS continued to keep Plaintiff's phone number stored, causing its system to randomly or sequentially dial the number dozens of times thereafter.

34. Any prior consent, if any, was revoked by Plaintiff's verbal revocations.

35. Defendant violated the TCPA by placing numerous phone calls to Plaintiff's cellular telephone from August 2020 through the present day, using an ATDS without is prior consent.

36. As pled above, Plaintiff was severely harmed by Defendant's collection calls to her cellular phone.

5

37. Upon information and belief, Defendant has no system in place to document and archive whether it has consent to contact consumers on their cellular phones.

38. Upon information and belief, Defendant knew its collection practices were in violation of the TCPA, yet continued to employ them to increase profits at Plaintiff's expense.

39. Upon information and belief, Defendant's phone system stores telephone numbers to be called, using a random or sequential number generator, which it used to call Plaintiff on her cellular phone.

40. The calls placed by Defendant to Plaintiff were regarding business activities and not for emergency purposes as defined by the TCPA under 47 U.S.C. §227(b)(1)(A)(i).

41. Defendant, through its agents, vendors, representatives, subsidiaries, and/or employees acting within the scope of their authority acted intentionally in violation of 47 U.S.C. §227(b)(1)(A)(iii).

42. Pursuant to 47 U.S.C. §227(b)(3)(B), Defendant is liable to Plaintiff for a minimum of $500 per call. Moreover, pursuant to 47 U.S.C. §227(b)(3)(C), Defendant's willful and knowing violations of the TCPA should trigger this Honorable Court's ability to triple the damages to which Plaintiff is otherwise entitled to under 47 U.S.C. §227(b)(3)(C).

**WHEREFORE**, Plaintiff, TONY M. BUTCHER, respectfully requests that this Honorable Court enter judgment in her favor as follows:

   a. Declare Defendant's phone calls to Plaintiff to be violations of the TCPA;
   b. Award Plaintiff damages of at least $500 per phone call and treble damages pursuant to 47 U.S.C. § 227(b)(3)(B)&(C);
   c. Enjoining Defendant from further communicating with Plaintiff; and
   d. Awarding any other relief as this Honorable Court deems just and appropriate.

Dated: October 20, 2020                                          Respectfully Submitted,

/s/ Marwan R. Daher
/s/ Alexander J. Taylor
Marwan R. Daher, Esq.
Alexander J. Taylor, Esq.
*Counsel for Plaintiff*
Sulaiman Law Group, Ltd
2500 S Highland Ave, Suite 200
Lombard, IL 60148
Telephone: (630) 575-8181
mdaher@sulaimanlaw.com
ataylor@sulaimanlaw.com